Teresa S. Renaker, *pro hac vice*
Kirsten G. Scott, *pro hac vice*
RENAKER HASSELMAN SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Telephone: (415) 653-1733
Facsimile: (415) 727-5079
teresa@renakerhasselman.com
kirsten@renakerhasselman.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MONTE MABRY,<br><br>                 Plaintiff,<br><br>    vs.<br><br>CONOCOPHILLIPS COMPANY, BENEFITS COMMITTEE OF THE CONOCOPHILLIPS RETIREMENT PLAN, and ALIGHT SOLUTIONS LLC,<br><br>                 Defendants. | Case No. 3:20-cv-00039-SLG<br><br>**[SECOND AMENDED COMPLAINT FOR VIOLATIONS OF ERISA AND STATE LAW**<br><br>(ERISA § 502, 29 U.S.C. § 1132)<br><br>**JURY TRIAL DEMANDED AS TO STATE-LAW CLAIMS** |

## JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f). As to the state-law claims, this Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) because the state-law claims form part of the same case or controversy. In addition, as to the state-law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**VENUE**

2.     Venue lies in the District of Alaska pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ConocoPhillips Retirement Plan ("ConocoPhillips Plan" or "Plan") is administered in part in this District and Defendants ConocoPhillips Company ("ConocoPhillips"), Benefits Committee of the ConocoPhillips Retirement Plan ("Benefits Committee"), and Alight Solutions LLC ("Alight") may be found in this District.

**NATURE OF THE DISPUTE**

3.     Mr. Mabry brings this suit to remedy harm that he suffered when, for at least six years, Defendants provided him inaccurate and misleading statements of his pension benefit, on which he relied in planning for his retirement.

4.     For several years when Mr. Mabry was in his 50s, Defendants issued him pension benefit statements showing that if he commenced his benefit at age 60, his ConocoPhillips Plan benefit would be $3,916.07 per month for life, or a lump sum of about $750,000, depending on the interest rate in effect at his retirement. Mr. Mabry relied on these statements in planning for his retirement, including in making employment choices and savings and spending decisions. But when Mr. Mabry reached age 60 and elected to commence his benefit, the ConocoPhillips Plan abruptly reduced his monthly benefit by more than 50 percent, to $1,734.39, resulting in a lump sum benefit at age 60 of only $344,693.01.

**The Parties and the Plan**

5.     At all relevant times, Plaintiff Monte Mabry has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the ConocoPhillips Plan. Mr. Mabry resides in Anchorage, Alaska.

6.     The ConocoPhillips Plan is an employee pension benefit plan as defined by ERISA § 3(2), 29 U.S.C. § 1002(2), sponsored by Defendant

ConocoPhillips. As of the end of 2018, the ConocoPhillips Plan had more than 14,000 participants and about $2.65 billion in assets.

7.     Defendant ConocoPhillips is a Delaware corporation with its principal place of business in Houston, Texas. ConocoPhillips is a fiduciary of the ConocoPhillips Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the ConocoPhillips Plan's assets, it exercises discretionary authority or discretionary control respecting management of the ConocoPhillips Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the ConocoPhillips Plan. Among other authority, ConocoPhillips has the authority to appoint the Benefits Committee and exercises discretion in selecting and monitoring the Benefits Committee and/or other fiduciaries. As of March 2019, ConocoPhillips described itself as Alaska's largest crude oil producer and the largest owner of exploration leases in Alaska.

8.     Under the terms of the ConocoPhillips Plan, Defendant Benefits Committee is the Plan Administrator of the ConocoPhillips Plan within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). The Benefits Committee is a named fiduciary of the ConocoPhillips Plan by reason of being the Plan Administrator, and is a fiduciary of the ConocoPhillips Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the ConocoPhillips Plan's assets, it exercises discretionary authority or discretionary control respecting management of the ConocoPhillips Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the ConocoPhillips Plan.

9.     As the named Plan Administrator, the Benefits Committee is the entity responsible for providing pension benefit statements to ConocoPhillips Plan participants as required by ERISA § 105(a), 29 U.S.C. § 1025(a).

10.    The ConocoPhillips Plan gives the Benefits Committee the

responsibility to "[s]elect, monitor, and replace third-party advisors to the Plan and the Trust, such as consultants, actuaries, record keepers, and other service providers"; "[a]rrange for compliance with participant disclosure requirements for employees, participants, and beneficiaries"; and "[o]versee maintenance of participant records and administration of the Plan." The ConocoPhillips Plan gives the Benefits Committee "absolute discretion in carrying out its responsibilities."

11.     Defendant Alight is an Illinois limited liability company with its principal place of business in Illinois. Beginning in January 2008 or earlier, Hewitt Associates LLC ("Hewitt") provided record-keeping and third-party administration services to the ConocoPhillips Plan. In June 2017, Hewitt was renamed Alight. Until January 1, 2020, Alight continued to provide record-keeping and third-party administration services to the ConocoPhillips Plan. Alight is registered to do business in Alaska. Hewitt and Alight are referred to herein as "Alight."

12.     Effective in January 2008, ConocoPhillips and the Benefits Committee contracted with Alight to carry out certain of the Benefits Committee's responsibilities for the ConocoPhillips Plan, including its pension benefit statement responsibilities under ERISA § 105(a) and its responsibility for processing pension applications and for deciding first-level benefit appeals. The contract between ConocoPhillips, the Benefits Committee, and Alight made Alight responsible for administering the Plan in accordance with its terms. Under the contract, Alight retained the right to exercise full control of an supervision over the performance of its obligations under the contract.

13.     While providing services to the ConocoPhillips Plan, Alight held itself out as providing "a total retirement approach to help drive better solutions and outcomes," based on "40+ years of knowledge, expertise, and innovation managing retirement plans for large organizations, helping people save, plan and

retire confidently." Alight publicly asserted that its defined benefit plan administration enabled employees "to retire confidently with industry-leading expertise, technology and support," with "a customer experience designed to help [employees] fully understand their options" and "tools and rigorous processes that assure quality in all aspects of the services we deliver," making "essential plan information easy to access and navigate."

## FACTS

### Mr. Mabry's Employment and Pension Service

14. In 1980, after receiving his B.S. in geophysics, Mr. Mabry began employment with Atlantic Richfield Company ("ARCO") at age 22. In 1985, he transferred to ARCO Alaska.

15. As an ARCO and ARCO Alaska employee, Mr. Mabry accrued pension benefits under the Atlantic Richfield Retirement Plan ("ARRP").

16. In 2000 and 2001, a series of transactions resulted in Phillips Petroleum Company ("Phillips") acquiring ARCO Alaska. Mr. Mabry became a Phillips employee and a participant in the Phillips Retirement Income Plan.

17. In 2003, Phillips merged with Conoco, Inc., becoming ConocoPhillips. The Phillips Retirement Income Plan and the Conoco Retirement Plan merged to form the ConocoPhillips Plan.

18. Mr. Mabry was laid off from ConocoPhillips effective April 9, 2009, at age 50.

19. After Mr. Mabry separated, ConocoPhillips amended and restated the ConocoPhillips Plan effective January 1, 2016, and again effective January 1, 2019. The 2019 Plan provides that "except as otherwise expressly set forth herein, the rights and benefits, if any, of a Participant (and his beneficiaries) who terminated his service prior to the Effective Date shall be determined under the provisions of the Plan as in effect on the date his service terminated."

//

**Pertinent Plan Terms**

20.     The ConocoPhillips Plan is a defined benefit pension plan, meaning that each participating employee is entitled to a fixed periodic payment during retirement based on a pension calculation formula set forth in the Plan.

21.     ERISA defines "accrued benefit" to mean a participant's benefit payable as an annual benefit commencing at normal retirement age ("normal retirement benefit"). The annual benefit is an annuity for the life of the participant, or "single-life annuity."

22.     Under ERISA, any alternative form of benefit – such as a lump-sum payment – must be at least the actuarial equivalent of the single-life annuity commencing at normal retirement age.

23.     Normal retirement age under the ConocoPhillips Plan is age 65.

24.     The ConocoPhillips Plan uses a final average pay formula to calculate benefits. Under this formula, a participant's pension is calculated based on factors including his years of credited service and his average annual earnings during his highest three years of earnings out of his final eleven years of employment.

25.     For "ARCO Acquired Employees," including Mr. Mabry, credited service under the ConocoPhillips Plan is equal to service under the ARRP plus service under the ConocoPhillips Plan. Thus, Mr. Mabry's credited service under the ConocoPhillips Plan commences October 1, 1980.

26.     Mr. Mabry's dates of service under the Plan are October 1, 1980, through April 9, 2009.

27.     Defendants calculated Mr. Mabry's final average earnings as $15,411.40 per month.

28.     Under the ConocoPhillips Plan provisions applicable to Mr. Mabry, a participant is entitled to a normal retirement benefit commencing at age 65, or a reduced early retirement benefit commencing before age 65. However, a

participant who has attained at least age 55 at the time of early retirement or whose employment terminates due to layoff can receive an unreduced early retirement benefit at age 60.

29. Under these provisions, Mr. Mabry was entitled to receive his normal retirement benefit commencing May 1, 2018 – the first of the month after his 60th birthday.

30. Mr. Mabry's pension benefit is the greatest amount of those produced by multiple alternative calculations set forth in the ConocoPhillips Plan. Each of these alternative calculations requires either (1) subtracting the participant's normal retirement benefit under the ARRP, as reported to the Benefits Committee by ARCO; or (2) disregarding the participant's ARCO credited service.

31. The Plan also provides for a Social Security make-up benefit, which is an additional monthly benefit for participants who commence their benefits before age 62, and is payable from the participant's benefit commencement date until he reaches age 62.

32. The Plan also requires that if the Committee, or any other fiduciary or their representatives, commits an error with respect to the benefits of a participant, the amount of the affected participant's benefit shall be adjusted in an equitable manner to conform to the facts.

**Alight's Plan Administration, Record-Keeping, and Participant Support Functions**

33. Pursuant to the Benefits Committee's delegation of authority, Alight's responsibilities with respect to the ConocoPhillips Plan included providing and auditing automated and manual pension calculations, maintaining historical data that affect pension benefit calculations, complying with qualified domestic relations orders ("QDROs") of state courts for the division of pension benefits, and providing retirement counseling to ConocoPhillips Plan

1 participants.

2      34.    Upon information and belief, Alight prepared a "requirements

3 document" to use as a guide in programming automated pension calculations for

4 the ConocoPhillips Plan and in performing manual pension calculations for the

5 ConocoPhillips Plan. Upon information and belief, the "requirements document"

6 sets forth the steps to calculate participants' pension benefits.

7      35.    Upon information and belief, in performing its functions, Alight

8 used a proprietary recordkeeping system known as "TBA," for Total Benefits

9 Administration.

10     36.    Upon information and belief, Alight uses TBA to house the data

11 necessary to calculate participants' pension benefits according to the relevant

12 plan's provisions – in this case, the provisions of the ConocoPhillips Plan – and

13 Alight uses TBA to perform those calculations when they can be performed

14 programmatically.

15     37.    Pursuant to Alight's contract with ConocoPhillips, ConocoPhillips

16 had online access to Alight's TBA system. Therefore, the Benefits Committee

17 had online access to the TBA system.

18     38.    Upon information and belief, pursuant to the Benefits Committee's

19 delegation of authority, Alight operated the ConocoPhillips Benefits Center and

20 a website at http://digital/alight.com/conocophillips, and issued pension benefit

21 statements and other communications on ConocoPhillips letterhead.

22     39.    Alight provided ConocoPhillips Plan participants access to pension

23 benefit information through the Alight website, which allowed participants to

24 "model" their  ConocoPhillips Plan benefits by entering a planned benefit

25 commencement date to generate an accrued benefit statement.

26     40.    Upon information and belief, Alight programmed the Total Benefits

27 Administration system to perform benefit calculations in accordance with the

28 requirements documents that it prepared for the ConocoPhillips Plan.

41.     Upon information and belief, under some circumstances, the Total Benefits Administration system is not equipped to calculate a participant's accrued benefit or generate an accrued benefit statement, due to the combination of data points necessary to calculate the participant's accrued benefit.

42.     Upon information and belief, when the Total Benefits Administration system is not equipped to perform a pension calculation, Alight staff perform the calculation manually using the manual calculation procedures and requirements document prepared by Alight for the specific pension plan.

43.     Alight did not program the Total Benefits Administration system to calculate ConocoPhillips Plan pensions that were subject to qualified domestic relations orders ("QDROs"). Therefore, Alight staff were tasked with performing manual calculations for any ConocoPhillips Plan pension involving a QDRO.

44.     Upon information and belief, Alight's administration of the ConocoPhillips Plan included establishing manual calculation procedures and performing quarterly audits of those procedures.

## Mr. Mabry's QDRO and Pension Calculation

45.     In October 2008, the Alaska Superior Court issued a QDRO awarding a portion of Mr. Mabry's ConocoPhillips Plan benefit to his former spouse as alternate payee. Specifically, the QDRO awarded the alternate payee 72.5 percent of Mr. Mabry's accrued normal retirement benefit as of March 31, 2008. The QDRO directed that the amount awarded to the alternate payee "shall be segregated as a separate defined benefit solely under the name of the Alternate Payee for the Alternate Payee's benefit and as the Alternate Payee's sole and separate property."

46.     The QDRO was submitted to ConocoPhillips and/or Alight to calculate and segregate the alternate payee's share.

47.     On December 8, 2008, ConocoPhillips wrote to Mr. Mabry and the alternate payee, stating that pursuant to the QDRO, the alternate payee's "benefit

will be segregated as a separate defined benefit solely under her name, for her benefit and as her sole and separate property."

48.     On December 16, 2008, ConocoPhillips again wrote to Mr. Mabry and the alternate payee, enclosing a calculation of the alternate payee's benefit and reiterating that her "benefit will be segregated as a separate defined benefit solely under her name, for her benefit and as her sole and separate property."

49.     Alight calculated the amount awarded to the alternate payee as $2,181.68.

50.     Under the terms of the QDRO, this amount was fixed as of March 31, 2008. Thus, all subsequent calculations of Mr. Mabry's normal retirement benefit should have included a reduction of $2,181.68 representing the alternate payee's segregated share.

51.     In October 2009, Alight noted in the Total Benefits Administration system that it had "added QDRO offset amount of $2,181.68 from template provided by [ConocoPhillips]."

52.     In July 2010, Alight updated the TBA system to note with respect to Mr. Mabry, "Retirement calc should be manual." The note states that the TBA system could not calculate Mr. Mabry's pension with both the reduction for his ARCO benefit and the reduction for the alternate payee's share.

53.     Specifically, the note states, "If the qdro was included, calc engine would not recognize the qdro in the arco compare calcs and would give the [participant] the [Retirement Income Plan] service only benefit without the QDRO."

54.     Thus, by July 2010, the TBA system reflected that an automated calculation of Mr. Mabry's pension would be overstated by $2,181.68 per month because the TBA system's calculation would not reflect the reduction for the alternate payee's segregated benefit.

55.     By July 2010, Defendants were aware that Mr. Mabry's benefit

required a manual calculation and that automated calculations would overstate Mr. Mabry's benefit by $2,181.68 per month, and a warning to this effect was present on the TBA system.

56.     Nonetheless, Defendants did not ensure that Mr. Mabry received pension benefit statements based on manual calculations. After calculating the alternate payee's segregated benefit, Defendants did not perform a manual calculation of Mr. Mabry's benefit until 2018.

57.     Instead, for more than six years, Defendants provided Mr. Mabry with pension benefit statements based on the TBA system's calculation, which Defendants knew were incomplete and inaccurate.

58.     Mr. Mabry did not know, and had no way of knowing, that Alight's automated calculations were inaccurate, or that a manual calculation was necessary to accurately compute his benefit amount.

## Mr. Mabry's Pension Statements

59.     After Mr. Mabry separated from ConocoPhillips in April 2009, he regularly checked the ConocoPhillips benefit website to calculate his ConocoPhillips Plan benefit as of various potential commencement dates. The website consistently showed him benefit amounts based on an age-65 single-life annuity of $3,916.07, which was available to him as an unreduced benefit at age 60. The statements showed this benefit converting to a lump sum of more than $600,000, depending on the benefit commencement date that Mr. Mabry selected and the interest rate anticipated to be in effect at the benefit commencement date.

59A.     The 2014 summary plan description for the ConocoPhillips Plan instructed that participants should "Contact the Benefits Center if you have questions about the Plan or any other Plan-related business."

59B.     The 2014 summary plan description further instructed, "Visit Your Benefits Resources (YBR) . . . at *http://resources/hewitt.com/conocophillips* to view pension, retirement planning, health and welfare and personal information."

59C. Upon information and belief, the Benefits Committee, or Alight at the Benefits Committee's behest, sent ConocoPhillips Plan participants, including Mr. Mabry, an annual notice instructing them on how to make a written request for a pension benefit statement using the benefits center website.

59D. Mr. Mabry used the website to make written requests for pension benefit statements. To the best of Mr. Mabry's current recollection, to request a pension benefit statement from the website, he took steps including the following:

    i.    Navigated to the ConocoPhillips benefit website;

    ii.    Identified himself by typing login information into fields on the website, including his employee identification number or Social Security number;

    iii.    Navigated to the retirement area of the website by selecting menu options;

    iv.    Typed in his proposed benefit commencement date;

    v.    Printed the resulting statement.

59E. At no point in this process of requesting pension benefits statements did Mr. Mabry communicate orally with anyone. All the information that he conveyed to request a pension benefit statement was conveyed in visual form, either by typing information into the website or selecting among options on the website.

59F. Alight's online system recorded data from each of Mr. Mabry's written requests and the system's response, showing the benefit commencement date typed in by Mr. Mabry and the resulting calculation. Examples of these records are attached as Exhibit D.

60. Specifically, Mr. Mabry received all of the following statements:

//

//

| Statement Date | Benefit Commencement Date (BCD) | Single-Life Annuity at Normal Retirement Date | Single-Life Annuity at BCD | Lump Sum at BCD |
|---|---|---|---|---|
| Jan. 6, 2011 | May 1, 2018 | $3,916.07 | $3,916.07 | $644,552.62 |
| Jan. 6, 2011 | May 1, 2020 | $3,916.07 | $3,916.07 | $620,661.07 |
| Aug. 11, 2014 | Sept. 1, 2014 | not stated | $3,198.00 | $607,625.00 |
| Aug. 11, 2014 | April 1, 2018 | not stated | $3,900.00 | $694,246.00 |
| Sept. 23, 2015 | May 1, 2018 | $3,916.07 | $3,916.07 | $744,755.22 |
| Feb. 4, 2016 | May 1, 2018 | $3,916.07 | $3,916.07 | $774,306.02 |
| June 27, 2016 | May 1, 2020 | $3,916.07 | $3,916.07 | $744,779.74 |
| June 24, 2017 | Sept. 1, 2017 | $3,916.07 | $3,785.54 | $708,297.44 |
| June 24, 2017 | May 1, 2018 | $3,916.07 | $3,916.07 | $724,269.96 |
| Apr. 30, 2018 | June 1, 2018 | not stated | not stated | $782,869.80 |
| July 11, 2018 | Mar. 1, 2018 | $3,916.07 | $3,883.44 | $758,726.54 |
| July 11, 2018 | April 1, 2018 | $3,916.07 | $3,899.75 | $765,273.13 |
| July 11, 2018 | May 1, 2018 | $3,916.07 | $3,916.07 | $767,035.27 |
| unknown | Nov. 1, 2017 | $3,916.07 | $3,818.16 | $735,993.18 |
| unknown | Feb. 1, 2018 | $3,916.07 | $3,867.13 | $756,923.63 |

61.     Examples of these statements are attached hereto as Exhibit A.

62.     Unbeknownst to Mr. Mabry, every one of these statements included in Mr. Mabry's normal retirement benefit the $2,181.68 that should have been segregated for the alternate payee. That is, all of the statements overstated Mr. Mabry's normal retirement benefit by $2,181.68, with resulting inflation of his single-life annuity and lump-sum benefits at every potential benefit commencement date.

63.     As of Mr. Mabry's separation from service in April 2009, each data point in the calculation of his normal retirement benefit was a fixed number. None of the data points – including birth date, final average pay, years of service, and ARRP benefit – was subject to any change after his separation from service.

There was no estimation involved in calculating Mr. Mabry's normal retirement benefit after his separation from service.

64.     The only variable factor reflected in Mr. Mabry's pension statements was the interest rate used to convert the normal retirement benefit to a lump sum, because the interest rate used in that conversion is the one in effect at benefit commencement.

## Mr. Mabry's Benefit Commencement

65.     In early 2018, as he approached his 60th birthday – the first age at which he could receive an unreduced pension benefit – Mr. Mabry requested a pension application packet from the ConocoPhillips benefit center. Mr. Mabry informed the benefit center that he wished to commence his benefit as of May 1, 2018 – the first date as of which he was eligible for an unreduced benefit.

66.     The benefit center sent Mr. Mabry an election packet showing that for the May 1, 2018, commencement date, he could choose a single-life annuity of $1,734.39 per month or a lump sum of $344,693.01. These amounts were less than 50 percent of the amounts shown on all of Mr. Mabry's pension benefit statements since 2011.

67.     Mr. Mabry was shocked at the drastic reduction in his pension benefit as shown in the election packet. He called the benefit center several times seeking an explanation for the drastic reduction. Various benefit center representatives – Alight employees – told him that his pension required a manual calculation due to the QDRO, that he should not have been able to obtain online pension statements, and that the benefit center would get back to him to explain further. Some benefit center representatives suggested that either the QDRO was being processed by ConocoPhillips for the first time or a second QDRO had been submitted. Mr. Mabry repeatedly expressed that the QDRO had been in place since 2008 and questioned whether it was being applied twice. He explained that he had been told that a separate account had been set up in 2008.

68. While awaiting an explanation for the reduction, Mr. Mabry did not complete the election paperwork to start his benefit as of May 1, 2018.

69. After sending Mr. Mabry the pension election packet and speaking with him by phone, Defendants generated and mailed to Mr. Mabry a document entitled "Participant Statement Prepared Especially for: Monte Mabry." (Ex. B.) This statement said, "Based on a payment effective date of June 1, 2018, your single lump sum amount is estimated* to be $782,869.80." (The asterisk did not refer to anything.) This amount was wildly inaccurate and contradicted the figures in the pension election packet.

70. Mr. Mabry called the benefit center several more times, requesting an explanation for why his election paperwork showed a lump-sum amount as of May 1, 2018, that was less than 50 percent of the amount the statement promised he could receive as of June 1, 2018.

71. In one call, a benefit center representative told Mr. Mabry that rather than $782,869.80, as shown on the April 30 statement, or $344,693.01, as shown in the pension election paperwork, his lump-sum benefit was $431,971. This amount was also incorrect.

72. In response to his inquiries, Defendants sent Mr. Mabry a "Phillips Retirement Income Plan Informational Notice" dated July 11, 2018. The Informational Notice stated that Mr. Mabry's ConocoPhillips Plan benefit would be calculated as follows: "1.6% of Final Average Earnings (FAE) *times* Credited Service (1/75 to Current) (up to 576 months) [¶] *Minus* 1.5% of Primary Social Security (PSS) *times* Credited Service (up to 400 months[]) [¶] *Equals* Your **annual** final average earnings benefit divided by 12, equals your **monthly** final average earnings benefit." (Ex. C.) The Informational Notice did not mention either the reduction for Mr. Mabry's ARRP benefit or the QDRO.

73. The Informational Notice reiterated that Mr. Mabry's single-life annuity benefit was $3,916.07 and his lump-sum as of May 1, 2018, would have

been $767,035.27. These amounts were incorrect, and contradicted the figures in the pension election packet.

74.     During calls with the benefit center, Mr. Mabry repeatedly told benefit center representatives that he wished to dispute his pension amount.

75.     Upon information and belief, no benefit center representative informed Mr. Mabry that he could submit a claim for additional pension benefits pursuant to the ConocoPhillips Plan's claim procedure or that he could appeal the reduction of his pension benefit pursuant to the ConocoPhillips Plan's appeal procedure.

76.     Defendants never sent Mr. Mabry a notice of adverse benefit determination pursuant to the Department of Labor's claims procedure regulation, 29 C.F.R. § 2560.503-1(g).

77.     During 2018, while Defendants repeatedly provided Mr. Mabry with inconsistent information and Mr. Mabry attempted to obtain a satisfactory explanation for the vastly disparate pension amounts being quoted to him, interest rates were increasing, further reducing the lump-sum amount.

78.     Also during this time, the number of months during which Mr. Mabry was eligible to receive the Social Security make-up benefit declined as he approached age 62, reducing the value of that benefit.

79.     Recognizing that he was losing pension benefits while trying in vain to obtain a satisfactory explanation for the reduction in his normal retirement benefit, Mr. Mabry again requested a pension election packet. Ultimately, Mr. Mabry received his pension in the form of a lump-sum payment by a check issued to his individual retirement account custodian on February 16, 2019. At that point, the lump-sum amount was $323,015.25 for Mr. Mabry's pension plus $12,033.52 for his Social Security make-up benefit.

80.     Mr. Mabry filed this suit on January 29, 2020.

//

**Mr. Mabry's Reliance**

81.    In planning for his retirement, Mr. Mabry relied on the information that he had received from Defendants beginning in at least 2011 that showed that he would be eligible for a lump-sum benefit at age 60 of at least $700,000. Mr. Mabry relied on this information in making employment choices and savings and spending decisions, including decisions about funding his children's college educations.

82.    Until Defendants announced the drastically reduced benefit amount that Mr. Mabry ultimately received, he did not know, and had no reason to know, that Defendants were miscalculating his ConocoPhillips Plan benefit.

### FIRST CLAIM FOR RELIEF
**Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a),
Against Defendants ConocoPhillips and Benefits Committee**

83.    Mr. Mabry incorporates Paragraphs 1 through 82 as though fully set forth herein.

84.    ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan. These duties include the duty to provide complete and accurate information regarding participants' benefits.

85.    ConocoPhillips and the Benefits Committee breached their fiduciary duties to Mr. Mabry by acts and omissions including failing to ensure that they or their delegees provided Mr. Mabry with complete and accurate information regarding the amount of his ConocoPhillips Plan benefit.

86.    Mr. Mabry reasonably relied on the pension information he received in planning for his retirement.

87.    Mr. Mabry has been harmed by ConocoPhillips' and the Benefits Committee's breaches in that his retirement income and savings are hundreds of

thousands of dollars less than they would have been had Mr. Mabry received accurate information about the ConocoPhillips Plan benefit.

88. Mr. Mabry has also been harmed by ConocoPhillips' and the Benefits Committee's breaches in that from May 1, 2018, to February 1, 2019, while ConocoPhillips and the Benefits Committee were providing him with wildly inconsistent statements of his pension benefits, the lump-sum value of his pension declined by more than $20,000 and the lump-sum value of his Social Security make-up benefit declined by more than $6,000.

### SECOND CLAIM FOR RELIEF
#### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a), Against Defendant Alight

89-95. Claim dismissed with prejudice by order dated February 22, 2021 (ECF 52). *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 927-28 (9th Cir. 2012) (*en banc*).

### THIRD CLAIM FOR RELIEF
#### Claim for Violation of ERISA § 105, 29 U.S.C. § 1025, Against Defendant Benefits Committee

96. Mr. Mabry incorporates Paragraphs 1 through 82 as though fully set forth herein.

97. ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), requires that a plan administrator furnish pension benefit statements to a defined benefit plan participant upon written request.

98. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief from a violation of ERISA.

99. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant to bring a civil action for the relief provided for in ERISA § 502(c), 29 U.S.C. § 1132(c).

100. ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides that any administrator who fails to meet the requirements of ERISA § 105(a), 29

U.S.C. § 1025(a), with respect to a participant may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper. For this purpose, each violation with respect to any single participant shall be treated as a separate violation. 29 C.F.R. § 2575.502c-1 increases the penalty under ERISA § 502(c) to $110 per day.

101. The Benefits Committee violated Section 105(a) by failing to provide Mr. Mabry with accurate statements of his ConocoPhillips Plan benefit in response to his requests and/or by failing to monitor the performance of its delegate that provided pension statements to Mr. Mabry. For more than six years, Mr. Mabry never received an accurate statement of his ConocoPhillips Plan benefit.

102. Mr. Mabry was harmed by the Benefits Committee's violations in that he relied on the erroneous statements in making retirement and financial planning decisions.

### FOURTH CLAIM FOR RELIEF
*In the Alternative to the Second Claim for Relief*
**Claim for Professional Negligence Against Defendant Alight**

103. Mr. Mabry incorporates Paragraphs 1 through 82 as though fully set forth herein.

104. A service provider performing professional services owes a duty of care to the intended beneficiaries of the professional services rendered, including, without limitation, the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise. A failure to perform these duties constitutes negligence.

105. A service provider that holds itself out as a specialist in a particular field, such as the calculation of benefits under a pension plan, has the duty (1) to have the knowledge and skill ordinarily possessed, and (2) to perform the services that it was engaged to do, diligently and faithfully, and with the skill and

prudence ordinarily possessed and observed by others in the same profession. A failure to fulfill either duty constitutes negligence.

106. Thus, a service provider providing services to an employee benefit plan has a duty to exercise such care, skill, prudence, and diligence as other members of the profession commonly possess and exercise in the course of the provision of services to or for an employee pension benefit plan. A service provider's failure to perform its professional services in such a manner constitutes negligence.

107. Alight breached its professional duties by providing grossly inaccurate information to Mr. Mabry regarding the amount of his benefit under the ConocoPhillips Plan on numerous occasions over at least a six-year period, and by related acts and omissions.

108. As a consequence of Alight's professional negligence, Mr. Mabry has been injured in that he relied on the inaccurate information in planning for his retirement, and he has suffered losses as a result.

**FIFTH CLAIM FOR RELIEF**
*In the Alternative to the Second Claim for Relief*
**Claim for Negligent Misrepresentation Against Defendant Alight**

109. Mr. Mabry incorporates Paragraphs 1 through 82 as though fully set forth herein.

110. Alight, in the course of its business or profession, misrepresented to Mr. Mabry the amount of his benefit under the ConocoPhillips Plan.

111. Alight had no reasonable ground for believing that its statements regarding the amount of Mr. Mabry's benefit were true.

112. Alight had a duty to Mr. Mabry to exercise reasonable care and competence in providing him with statements of his pension benefit.

113. Alight intended that Mr. Mabry act in reliance on its statements of his pension benefit for purposes of financial planning, including because there is no purpose for a pension benefit statement other than to assess the value of the

pension benefit.

114. Mr. Mabry justifiably relied on Alights's pension statements in planning for his retirement.

115. Mr. Mabry has been injured as a result of his justifiable reliance on the inaccurate information in planning for his retirement, and has suffered losses as a result.

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Mabry prays that the Court grant the following relief:

As to the First Claim for Relief:

    A.    Declare that Defendants ConocoPhillips and Benefits Committee have breached their fiduciary duties to Mr. Mabry;

    B.    Order that Defendants ConocoPhillips and Benefits Committee are estopped to deny that Mr. Mabry is entitled to benefits under the ConocoPhillips Plan consistent with the statements provided to him prior to 2018;

    C.    Surcharge Defendants ConocoPhillips and Benefits Committee in the amount necessary to place Mr. Mabry in the position he would have occupied but for Defendants' breaches;

    D.    Award Mr. Mabry reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

    E.    Provide such other equitable relief as the Court deems appropriate.

As to the Second Claim for Relief:

Claim dismissed with prejudice by order dated February 22, 2021 (ECF 52). *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 927-28 (9th Cir. 2012) (*en banc*).

As to the Third Claim for Relief:

    A.    Declare that Defendant Benefits Committee violated ERISA § 105,

1    29 U.S.C. § 1025;

2    B.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), order that
3         Defendant Benefits Committee is estopped to deny that Mr. Mabry
4         is  entitled to benefits under the ConocoPhillips Plan consistent with
5         the statements provided to him prior to 2018;

6    C.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), award such
7         other equitable relief as the Court deems appropriate;

8    D.   Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the Benefits
9         Committee personally liable to Mr. Mabry in the amount of $110 a
10        day from the date of each separate failure to meet the requirements
11        of ERISA § 105(a), 29 U.S.C. § 1025(a);

12   E.   Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other
13        relief as the Court deems proper;

14   F.   Award Plaintiff reasonable attorneys' fees and costs of suit incurred
15        herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

16   G.   Provide such other relief as the Court deems equitable and just.

17   As to the Fourth Claim for Relief:

18   A.   Order that Alight pay Mr. Mabry damages for the harm he has
19        suffered as a consequence of Alight's professional negligence; and

20   B.   Provide such other relief as the Court deems equitable and just.

21   As to the Fifth Claim for Relief:

22   A.   Order that Alight pay Mr. Mabry damages for the harm he has
23        suffered as a consequence of Alight's negligent misrepresentations;
24        and

25   B.   Provide such other relief as the Court deems equitable and just.

26   //

27   //

28   //

## DEMAND FOR JURY TRIAL

Mr. Mabry demands a jury trial as to his claims brought under state law.

Respectfully submitted,

Dated: August 13, 2021          RENAKER HASSELMAN SCOTT LLP


By:    */s/ Teresa S. Renaker*

Teresa S. Renaker
Attorneys for Plaintiff